IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANASTASIA GRADY, et al.,

        Plaintiffs,

v.                                                                  CIVIL ACTION NO. 2:24-cv-00214

WOOD COUNTY, WEST VIRGINIA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Wood County Commission's Motion to Dismiss Plaintiffs' Complaint.[1] (ECF No. 7.) For the reasons set forth below, Defendant's motion is **DENIED** in part and **GRANTED** in part.

*I.     Background*

Anastasia Reutelshofer (formerly Grady) and Kenneth S. Grady ("Plaintiffs"), her brother, owned a home as tenants in common located in Wood County at 1300 West Virginia Avenue, Parkersburg, West Virginia. (ECF No. 1 at 2.) Plaintiffs agreed that Reutelshofer and her family would reside at the residence, and she would pay Wood County ("Defendant") any taxes owed on the home. (*Id.* at 3.) Reutelshofer and her family later suffered financial hardships that caused her to fall behind on the property taxes due to Defendant. (*Id.* at 4.) Consequently, a tax lien of

---

[1] Also before the Court is Defendant's Motion to Strike (ECF No. 12) and Plaintiffs' Motion for Enlargement of Time (ECF No. 14.) As the law prefers a decision on the merits, Defendant's motion is **DENIED** and Plaintiffs' motion is **GRANTED**.

1

$1,282.41 was placed on the home pursuant to West Virginia law. (*Id.*) Following a period where Plaintiffs received notification and an opportunity to redeem the tax lien, the Wood County Sheriff placed the tax lien for auction. (*Id.*) A private company, TASHPA, LLC ("TASHPA"), purchased the tax lien at auction for $3,467.79 on November 10, 2020. (*Id.*) Plaintiffs did not receive any of the excess amount that Wood County received from the auction. (*Id.*)

Following the auction, Reutelshofer received a Notice of Right to Redeem the home, advising her that a tax deed would be issued to TASHPA unless she paid Wood County $2,235.18 by March 31, 2022. (*Id.*) This amount was more than the unpaid taxes and did not account for the $3,467.79 that the county received from the auction. (*Id.* at 5.) At the time of the Notice, the home was appraised by the Wood County Tax Assessor "as exceeding $150,000.00." (*Id.*) Upon collecting the amount needed to redeem the tax lien, Reutelshofer gave the money and the Notice of Redemption to her mother, Dawna Grady. (*Id.*) Dawna Grady provided the payment and Notice of Right to Redeem to the Wood County Deputy Tax Clerk, who issued her a receipt for the payment. (*Id.*; ECF No. 8 at 4.) However, instead of applying the funds to the home in question, the staffer mistakenly applied the payment to taxes owed on a property or properties in the name of Kenneth R. Grady, the Plaintiffs' deceased uncle. (ECF No. 1 at 5.) Because of this, the period of redemption expired without payment and the County issued a tax deed to TASHPA for the home on April 29, 2022, terminating Plaintiffs' right of redemption and divesting Plaintiffs of their equity in the home. (*Id.* at 6.)

Plaintiffs filed their complaint alleging constitutional violations through 42 U.S.C. § 1983 for: an uncompensated taking (Count I), an excessive fine (Count II), denial of substantive due process (Count III), and denial of equal protection (Count IV). (ECF No. 1.) Defendant filed its

motion to dismiss on July 29, 2024. (ECF No. 7.) Plaintiffs filed a response on August 16, 2024. (ECF No. 10.) Finally, Defendant timely filed its reply on August 23, 2024. (ECF No. 13.) Therefore, the motion is fully briefed and ripe for adjudication.

## II.     Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (quoting *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To achieve facial

plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Courts, however, "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 268 (1986)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Id.* at 555, 570.

### III.   Discussion

Before examining the four counts alleged in the complaint, the Court must address the issue of who the proper defendant is in this case. Plaintiffs have named "Wood County" as the Defendant in their complaint. (ECF No. 1.) Defendant argues that "Wood County" is an improper party because it is not a legal entity capable of being sued. (ECF No. 8 at 6.) Defendant asserts that the proper party is the Wood County Commission. (*Id.*) The Court will construe the Defendant to be the Wood County Commission.

A. *Count I*

In Count I, Plaintiffs allege under 42 U.S.C. § 1983 that Defendant engaged in an uncompensated taking in violation of the Fifth and Fourteenth Amendments of the United States Constitution. (ECF No. 1 at 9.) Plaintiffs allege that this uncompensated taking occurred by the Defendant issuing the tax deed to TASHPA, which deprived Plaintiffs of ownership, title, and $150,000 in equity previously owned. (*Id.* at 6.) Plaintiffs argue that the taking is uncompensated, and Plaintiffs thus suffered injury because they were denied compensation

4

"equaling at a minimum the excess received on the original sale of the tax lien . . . and the difference between the fair market value of the home on April 29, 2022, and the tax debt owed on that date."  (ECF No. 10 at 11.)

Defendant is seeking dismissal of this count, arguing that "regardless of whether Plaintiffs' claims are centered on the tax lien or the conveyance of a tax deed, they fail to state a plausible uncompensated takings claim."  (ECF No. 13 at 3.)   Defendant presents three main arguments as to why Plaintiffs fail to plausibly state a Fifth Amendment claim under the Takings Clause: (1) if Count I is "based upon the auction of the tax lien to TASHPA, there is no Taking because the Commission did not sell Plaintiffs' property," (2) if Count I is "based upon the later conveyance of the tax deed to TASHPA, that took place after Plaintiffs' land was encumbered by a tax lien for delinquent property taxes and had multiple chances to redeem the land before enforcement, they similarly fail to state a Takings claim," and (3) "there is no Taking based upon a lack of 'public use' because the sale of the tax lien, and eventual conveyance of a tax deed for enforcement of the same, is to generate tax revenue, eliminate delinquent lands, and ensure equitable payment of tax liability on property."  (ECF No. 13 at 5-6.)

The Fifth Amendment's Takings Clause, applicable to the States through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  Property taxes "are not themselves a taking, but are a mandated contribution from individuals . . . for support of the government . . . for which they receive compensation in the protection which government affords."  *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631, 637 (2023) (internal citations omitted).   "In collecting these taxes, the State may impose interest and late fees. It may also seize and sell property, including land, to

5

recover the amount owed." Id. at 637-638. However, "a taxpayer is entitled to the surplus in excess of the debt owed." *Id.* at 642. In *Tyler*, a Minnesota county sold a woman's home for $40,000 to satisfy a $15,000 tax bill. *Id.* at 634. Following the sale, the county retained proceeds in excess of the $15,000 bill. *Id.* The U.S. Supreme Court found that this constituted an uncompensated taking in violation of the Fifth Amendment, holding that the county "could not use the toehold of the tax debt to confiscate more property than was due." *Id.* at 639. While *Tyler* was a direct sale of the property itself, the present case deals with the auction of a tax lien and the subsequent transfer of a tax deed to a private party. The question is whether the difference in tax schemes could result in Plaintiffs having a protected property interest that would lead to an uncompensated taking.

In recognizing property interests, the U.S. Supreme Court has drawn on "existing rules or understandings about property rights." *Id.* at 638 (internal citations omitted). While state law is an important source, it is not the only source, "otherwise a state could 'sidestep the Takings clause by disavowing traditional property interests' in assets it wishes to appropriate." *Id.* (citing *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 167 (1998). In applying this approach prior to the *Tyler* decision, the U.S. Court of Appeals for the Sixth Circuit found that a plaintiff can sue for the surplus equity in property when there is no public auction. *Hall v. Meisner*, 51 F.4th 185, 194 (6th Cir. 2022). In *Hall*, the county that seized the property never sold it at an auction, so no surplus proceeds existed. *Id.* at 187-89. Rather, the county transferred the property to other municipalities for the amount of the tax debt. *Id.* The Sixth Circuit found that this action "effected a taking of the plaintiffs' equitable title, as recognized for centuries by Anglo-American property principles." *Bowles v. Sabree*, 121 F.4th 539, 547 (6th Cir. 2024). However,

6

the Sixth limited this to seizures of property where there is not a foreclosure sale. *Freed v. Thomas*, 81 F.4th 655, 659 (6th Cir. 2023). In cases of foreclosure sales, the court held that a plaintiff can only seek the return of the surplus proceeds, not the surplus equity. *Id.* In a post-*Tyler* decision, the Sixth Circuit reiterated these principles, summarizing that "[a] plaintiff can sue for surplus equity when there's no public auction (*Hall*), but not when there is one (*Freed*)." *Bowles*, 121 F.4th at 548.

In applying the decisions of *Tyler* and *Hall*, the Supreme Court of Nebraska also determined that a plaintiff has a property interest in the equity seized pursuant to a non-sale tax process. *Continental Resources v. Fair*, 317 Neb. 391, 405 (Neb. 2024). The Nebraska tax scheme operates similarly to West Virginia's. In Nebraska, each county has an automatic lien on property within its boundaries for the property taxes that are due to the government. *See* Neb. Rev. Stat. § 77-1901. Upon becoming delinquent, statute directs that the county offer to sell its lien via a tax certificate. *See* Neb. Rev. Stat. § 77-1806. A statute dictates the sale price of the certificate as "the amount of taxes, interest, and cost thereon." Neb. Rev. Stat. § 77-1808. Once the tax certificate is sold, the original owner is not divested of their rights in the property and is given three years to redeem the property. Neb. Rev. Stat. § 77-1837. If redemption does not occur in that period, the county treasurer is directed to provide a tax deed to the purchaser upon demand.[2] *Id.* Once issued, title to the property passes to the tax certificate purchaser free and clear of any encumbrances. *Id.*

Prior to the U.S. Supreme Court's decision in *Tyler*, the Supreme Court of Nebraska ruled that a plaintiff was not entitled to compensation for the difference between the value of his property

---

[2] A tax certificate purchaser may also pursue judicial foreclosure instead of demanding a tax deed. Neb. Rev. Stat. § 77-1902.

and his tax debt, reasoning that Nebraska law did not recognize that a former owner had a property right to value in the property over and above the tax debt. *Continental Resources v. Fair*, 311 Neb. 184, 185 (Neb. 2022). After, the plaintiff filed a petition for writ of certiorari in the U.S. Supreme Court. *Fair v. Continental Resources*, 143 S.Ct 2580 (Mem) (2023). While the petition for certiorari was pending, the U.S. Supreme Court issued the decision in *Tyler*. Following *Tyler*, the Supreme Court granted the plaintiff's petition for certiorari, vacated the Nebraska Supreme Court's prior decision, and remanded the case for further consideration in light of *Tyler*. *Id.* On remand, the Nebraska Supreme Court found that the plaintiff "had a protected property interest to the extent the value of the property exceeded his tax debt." *Fair*, 317 Neb. at 405. The court was persuaded that the "Sixth Circuit demonstrated in *Hall* that property law traditionally recognized an equitable interest in the value of property beyond liens or encumbrances upon it." *Id.* This Court also finds the Sixth Circuit's analysis persuasive.

In the present case, Plaintiffs became delinquent on their taxes and a tax lien was placed on the home. (ECF No. 1 at 4.) Subsequently, the tax lien was auctioned off to a private third party for $3,467.79. (*Id.* at 5.) Although Plaintiffs attempted to pay the late taxes, the funds were misapplied and the period of redemption expired, and the tax deed was issued to TASHPA. (*Id.* at 6.) Plaintiffs allege that the process of issuing the tax deed to TASHPA resulted in an uncompensated taking which deprived them of $150,000 in equity. (*Id.*) This Court sees few differences between the present case and the strict foreclosure and tax processes described in *Hall* and *Fair*. In light of *Tyler* and finding the Sixth Circuit's analysis persuasive, Plaintiffs have

sufficiently plead a claim for relief that is plausible on its face.[3] Defendant's Motion to Dismiss as to Count I is **DENIED**.

   B. *Count II*

In Count II, Plaintiffs allege through 42 U.S.C. § 1983 that Defendant levied an excessive fine in violation of the Eighth and Fourteenth Amendments of the United States Constitution. (ECF No. 1 at 9-10.) Plaintiffs allege that, by confiscating Plaintiffs' entire interest in their home for non-payment of $2,235.18 in property taxes, Defendant imposed and enforced an excessive fine on Plaintiffs that was not solely remedial and bore no correlation to any actual loss of tax revenue. (*Id.* at 10.) Defendant argues that Plaintiffs have failed to plausibly state an excessive fines claim because the tax lien was not grossly disproportionate in relation to Plaintiffs' failure to pay property taxes. (ECF No. 8 at 12.)

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. This Amendment protects "against excessive fines [and] guards against abuses of [the] government's punitive or criminal law enforcement authority." *Timbs v. Indiana*, 586 U.S. 146, 149 (2019). The Excessive Fines Clause "limits the Government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (citations omitted). The Clause is applicable to criminal and civil sanctions. *Austin v. United States*, 509 U.S. 602, 610 (1993). If a civil fine only serves a remedial purpose, it is not subject to the Eighth Amendment. *Korangy v. United States F.D.A.*, 498 F.3d 272, 277 (4th Cir.

---

[3] As it relates to Plaintiffs' claim that the alleged taking was not for public use, this Court finds the argument unpersuasive. *Tyler* reiterated that in collecting taxes, the state may seize and sell property to recover the amount owed, regardless of the purchasing party. 598 U.S. at 637-38.

sufficiently plead a claim for relief that is plausible on its face.[3]  Defendant's Motion to Dismiss as to Count I is **DENIED**.

   B. *Count II*

In Count II, Plaintiffs allege through 42 U.S.C. § 1983 that Defendant levied an excessive fine in violation of the Eighth and Fourteenth Amendments of the United States Constitution. (ECF No. 1 at 9-10.) Plaintiffs allege that, by confiscating Plaintiffs' entire interest in their home for non-payment of $2,235.18 in property taxes, Defendant imposed and enforced an excessive fine on Plaintiffs that was not solely remedial and bore no correlation to any actual loss of tax revenue. (*Id.* at 10.) Defendant argues that Plaintiffs have failed to plausibly state an excessive fines claim because the tax lien was not grossly disproportionate in relation to Plaintiffs' failure to pay property taxes. (ECF No. 8 at 12.)

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. This Amendment protects "against excessive fines [and] guards against abuses of [the] government's punitive or criminal law enforcement authority." *Timbs v. Indiana*, 586 U.S. 146, 149 (2019). The Excessive Fines Clause "limits the Government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (citations omitted). The Clause is applicable to criminal and civil sanctions. *Austin v. United States*, 509 U.S. 602, 610 (1993). If a civil fine only serves a remedial purpose, it is not subject to the Eighth Amendment. *Korangy v. United States F.D.A.*, 498 F.3d 272, 277 (4th Cir.

---

[3] As it relates to Plaintiffs' claim that the alleged taking was not for public use, this Court finds the argument unpersuasive. *Tyler* reiterated that in collecting taxes, the state may seize and sell property to recover the amount owed, regardless of the purchasing party. 598 U.S. at 637-38.

2007). However, if a civil fine "can only be explained as serving in part to punish," it is subject to the Eighth Amendment. *Id.* (quoting *Austin*, 509 U.S. at 610.) If a civil fine is at least partly punitive, it will be found constitutionally excessive only if it is "grossly disproportional to the gravity of [the] offense." *Bajakajian*, 524 U.S. at 334.

The first step is to examine whether the fine and seizure in question serve a purely remedial purpose. Plaintiffs argue that "a purely remedial tax collection process would limit itself to recovery of the actual amount of the tax, and the costs incurred in enforcing payment of the tax." (ECF No. 10 at 13.) While the tax amount of $2,235.18 was limited to the actual tax, interest, and costs incurred, Plaintiffs allege that the misapplication of their payment and subsequent seizure of the $150,000 home was a penalty against Plaintiffs because the seizure "bears no correlation to any actual Wood County loss and can only involve a punitive component." (*Id.*) Defendant counterargues that, according to Plaintiffs' allegations, Plaintiffs did not truly make a full payment of the tax debt in the first place, and beyond that, the County sold a tax lien on the home, not the home itself. (ECF No. 13 at 7.) Further in defense, Defendant correctly asserts that it is permissible to impose interest, late fees, and to seize and sell property to recover delinquent taxes. (*Id.*)

Despite Defendant's arguments, Plaintiffs have plausibly alleged that the seizure process is at least in part punitive. One legislative purpose for establishing the tax lien sale statute is the view that "delinquent land . . . represents a failure on the part of delinquent private owners to bear a fair share of the costs of government." West Virginia Code § 11A-3-1. The risk of losing such property through a tax deed transfer serves as a deterrent against future offenders, and "[e]conomic penalties imposed to deter willful noncompliance with the law are fines by any other name."

10

*Tyler*, 598 U.S. at 649-50 (Gorsuch, J., concurring). Furthermore, the idea that a party could impose more serious sanctions and evade an Excessive Fines Clause violation by erroneously applying funds from the initial fine holds little water.

      Next, this Court must examine whether Plaintiffs plausibly alleged that the fine was grossly disproportionate to the gravity of the offense. In examining this, courts can weigh four factors: (1) the "nature and extent of illegal activity;" (2) "whether the defendant fit into the class of persons for whom the statute was principally designed;" (3) "the maximum penalties that a court could have imposed for the offense;" and (4) "the harm caused by the offense." *United States v. $134,750 U.S. Currency*, 535 F. App'x 232, 239 (4th Cir. 2013) (citing *Bajakajian*, 524 U.S. 321); *see Sharritt v. Henry*, 2024 WL 4524501 (N.D. Ill., 2024) (applying the *Bajakajian* factors to the transfer of Illinois tax deeds.) As to factors one and two, the nature of the activity simply involves not paying taxes, and the Plaintiffs certainly fall within the design of the tax lien statute. While the violation of not paying property taxes likely warrants some form of remedial (or even punitive) measures, losing one's entire property equity under circumstances as alleged here is likely grossly disproportionate to the gravity of the offense. This is because, as the *Sharritt* court asserts for factor three, the "maximum fine is indefinite and undefined: it depends entirely on the value of the properties plaintiffs once owned and bears little relation to the amount of property taxes they failed to pay to the municipal governments." 2024 WL 4524501 at 15 (finding that plaintiffs who lost their property and equity through a tax deed transfer plausibly alleged an Excessive Fines claim). Finally, as to factor four, while Plaintiffs' unpaid taxes likely caused some harm, it is far less than the $150,000 of equity in the home, and Defendant has not asserted that Plaintiffs' failure to pay taxes resulted in a comparable harm. Therefore, these factors weigh in favor of finding that the

deed transfer was grossly disproportionate to the offense, so Plaintiff has plausibly alleged an Excessive Fines Clause violation. Defendant's Motion to Dismiss as to Count II is **DENIED**.

C. Count III

In Count III, Plaintiffs allege through 42 U.S.C. § 1983 that Defendant denied them substantive due process in violation of the Fourteenth Amendment of the United States Constitution. (ECF No. 1 at 10-11). Plaintiffs allege that Defendant's action "in confiscating legal title to the Plaintiffs' home and their entire equity in it to collect a relatively small sum in unpaid property taxes was arbitrary and capricious and in violation of due process." (*Id.*) Defendant argues that Plaintiffs fail to plausibly state a claim under the Substantive Due Process Clause because the tax collection statutes "bear a rational basis to its purpose of generating revenue." (ECF No. 8 at 15.) Plaintiffs counterargue that Defendant's issuance of the deed was an "egregious and outrageous act" that was an exercise of governmental power that shocks the conscience. (ECF No. 10 at 15-16.)

However, this Court need not address these arguments, as Plaintiffs' substantive due process claim is subsumed in Counts I and II. "The first problem with using substantive due process to do the work of the Takings Clause is that we have held it cannot be done." *Stop the Beach Renourishment, Inc. v. Florida Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010) (plurality opinion). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Courts have applied these principles to preclude substantive due process

12

claims where Takings Clause claims have been plausibly alleged. *See Bickertstaff Clay Prod. Co., Inc. v. Harris Cty.*, 89 F.3d 1481, 1490 (11th Cir. 1996) (finding that plaintiff's Takings Clause claim subsumed the substantive due process claim, and plaintiff's challenge to the zoning law lay solely under the Takings Clause); *Harmon v. Markus*, 412 F. App'x 420, 423 (2d. Cir. 2011) (holding that plaintiffs' due process claim fails as a matter of law because the Takings Clause is the guide for analyzing such claims); *Willowbrook Apartment Associates, LLC v. Mayor of Baltimore*, 563 F. Supp. 3d 428, 448 (D. Md. 2021) (precluding plaintiffs' substantive due process claim because plaintiffs did not point to a property interest that is distinct from the plausibly alleged claims under the Takings, Contracts, and Equal Protection Clauses); *see also Swagler v. Neighoff*, 398 F. App'x 872, 879-80 (4th Cir. 2010) (holding that appellees' substantive due process claims are "non-existent as a matter of law" because appellees' rights to free speech and freedom from unreasonable seizure are "explicitly, textually guaranteed under the First and Fourth Amendments").

Here, Plaintiffs allege that the confiscation of the home's title and equity to collect on a relatively small sum of unpaid taxes was arbitrary and capricious in violation of due process. (ECF No. 1 at 10-11.) This Count does not point to a property interest that is distinct from the interests raised in Counts I and II, and those claims arise under explicit textual sources of constitutional protection. Therefore, Plaintiffs' substantive due process claim is subsumed in the Takings and Excessive Fines claims. Defendant's Motion to Dismiss as to Count III is **GRANTED**.

13

D. *Count IV*

In Count IV, Plaintiffs allege through 42 U.S.C. § 1983 that Defendant denied them equal protection in violation of the Fourteenth Amendment of the United States Constitution. (ECF No. 1 at 11-12). Plaintiffs allege that the "differing treatment afforded homeowners whose property is subject to a lien for unpaid property taxes and homeowners whose property is subject to an involuntary lien in the same amount owed to a private creditor, is punitive, arbitrary, unreasonable, and invidiously discriminatory, such that Plaintiffs were denied the equal protection of the law." (*Id.* at 12.) Defendant argues that because Plaintiffs do not invoke a previously recognized fundamental right, their claim is analyzed, and fails, under the rational basis test. (ECF No. 8 at 13.)

The Fourteenth Amendment's Equal Protection Clause states in relevant part that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "If the disparate treatment involves a fundamental right or suspect classification, the state action must survive exacting judicial scrutiny. Otherwise, the disparity need only rationally relate to some legitimate state interest." *Kim v. Bd. of Educ. of Howard Cty.*, 93 F.4th 733, 740-41 (4th Cir. 2024). Under the rational basis standard, "the plaintiff bears the burden to negate every conceivable basis which might support the legislation." *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008) (internal citations omitted). "Further, the State has no obligation to produce evidence to support the rationality of the statute, which 'may be based on

rational speculation unsupported by any evidence or empirical data.'" *Id.* (quoting *FCC v. Beach Comms., Inc.*, 508 U.S. 307, 315 (1993).

Here, Plaintiffs base their equal protection argument on the holding in *Alexander v. Johnson*[4], which emphasized that "defendant[s] accepting court-appointed counsel cannot be exposed to more severe collection practices than the ordinary civil debtor." 742 F.2d 117, 124 (4th Cir. 1984). Plaintiffs do not argue that they are a protected class subject to heightened scrutiny, nor do they argue that the rational basis test is not satisfied. As homeowners, Plaintiffs are subject to the rational basis standard and must allege that the tax scheme is not rationally related to a legitimate government interest. Defendant argues that "West Virginia has legitimate interests in 'providing regular tax income for the state, county, and municipal governments,' and 'delinquent land not only constitutes a public liability, but also represents a failure on the part of delinquent private owners to bear a fair share of the costs of government.'" (ECF No. 8 at 15) (quoting West Virginia Code § 11A–3–1). Because Plaintiffs have not alleged that the statute fails the rational basis test, Plaintiffs have not plausibly alleged an equal protection violation. Therefore, Defendant's Motion to Dismiss as to Count IV is **GRANTED**.

## IV.  Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss is **DENIED** as to Counts I and II, but **GRANTED** as to Counts III and IV.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

---

[4] Plaintiffs incorrectly refer to *Alexander* as "Armstrong" in their response brief.

15

ENTER:     January 10, 2025

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE